CENTURY BUILDING COMPANY, INC., Appellant, vs. WIS-
CONSIN EMPLOYMENT RELATIONS BOARD and another,
Respondents.

*March 14—June 24, 1940.*

For the appellant there were briefs by *Wood, Warner & Tyrrell* of Milwaukee, and oral argument by *Richard H. Tyrrell.*

For the respondent Wisconsin Employment Relations Board there were briefs by the *Attorney General, James Ward Rector,* deputy attorney general, and *N. S. Boardman,*

assistant attorney general, and oral argument by *Mr. Board-man*.

For the respondent International Building Service Employees Union there were briefs by *Max Raskin,* attorney, and *Wm. F. Quick* of counsel, both of Milwaukee, and oral argument by *Mr. Raskin.*

The following opinion was filed April 9, 1940:

WICKHEM, J. After a full hearing, the Wisconsin Employment Relations Board issued the order sought to be reviewed by this action. The board found that Anna Shoman, Katherine Machak, and Frances Knapak are members of the defendant International Building Service Employees Union, Local No. 150; that up to the time of their discharge they were employed by plaintiff as charwomen; and that all were discharged during the month of May, 1939, solely because of their membership in the union and for the purpose of discouraging membership in such labor organization by discriminating in regard to their tenure of employment. As a conclusion of law it was found that plaintiff coerced its employees and interfered with their right of self-organization; discouraged membership in labor organizations by discriminatory tactics; and had engaged thereby in unfair labor practices. The order required the company to desist from in any manner interfering with, restraining, or coercing its employees in the exercise of collective bargaining; from in any manner discouraging membership in any labor organization by discrimination in regard to hire or tenure; and to post notices stating that plaintiff will cease these practices. Plaintiff was required to offer to its three discharged employees immediate and full reinstatement to their former positions, make compensation by paying each the sum of $25, and in addition pay full wages from the time of the order until an unconditional

offer of reinstatement be made. On August 29, 1939, plaintiff petitioned the circuit court for review of this order under the provisions of sec. 111.07 (8), Stats. 1939. The grounds of the petition were that the findings are unsupported by credible and competent evidence. The board answered denying the allegations of the petition and cross-petitioned for enforcement of its order. The union answered putting in issue the allegations of the petition. On September 13, 1939, plaintiff gave notice of a motion "for leave to adduce additional material evidence on the hearing before the court upon the subjects and in support of the facts" for the reasons set forth in its supporting affidavit. The supporting affidavit was that of Charles Kasik, president and managing officer of plaintiff, and was to the effect that the finding of union membership on the part of the discharged employees was solely based on testimony by one Cooper, agent of the defendant union, who stated that these women and other women employed by plaintiff paid $1 to the union in June, 1938, which he considered an initiation fee and dues for the first month, and that neither of the persons thereafter paid any dues or attended any union meetings, the union not requiring further dues until such time as it had been able to better working conditions for the people "in that particular building." The affiant further alleged that he had good reason to believe that this testimony is untrue, and that the records of the union will not sustain the testimony so given. The affiant further stated that the status of the discharged employees as members of the union was a matter wholly within the knowledge of the union, and that at the time of the hearing before the board plaintiff had no means of knowledge concerning this fact. Affiant further asserted that since the time of the discharge plaintiff has had no occasion to fill the places of the discharged persons, and that their services are not required, and that they should therefore not be reinstated.

In the meantime, on September 14, 1939, plaintiff had sought to examine adversely William Cooper and Philip Kielpinski as agents of the respondent union. The board and the union moved to suppress the adverse examination and opposed leave to adduce additional evidence on the ground that appellant had had ample opportunity to adduce this evidence before the board, and that the evidence, if taken, would not be sufficiently material to change the result. The trial court reserved ruling on these motions until arguments upon the merits of the review were heard, and then, as heretofore stated, denied the motions and confirmed the order of the board.

Plaintiff contends, (1) that the court erred in suppressing the adverse examination; (2) that it erred in denying the motion of plaintiff to adduce additional testimony; (3) that the order of the board is not supported by any competent evidence; and (4) that the trial court erred in ordering the reinstatement of discharged employees. With regard to the first contention, plaintiff argues that sec. 326.12, Stats., is applicable. This section provides for the adverse "examination of a party, or any person for whose immediate benefit any civil action or proceeding is prosecuted or defended." It is claimed, (1) that the petition to review is a proceeding; (2) that the union was a party or person for whose benefit the proceeding was prosecuted; and (3) that plaintiff had a right under sec. 326.12 to take and to use an adverse examination. Since what plaintiff sought to establish by the adverse examination was the precise standing of the discharged employees as members of the union, and since for reasons hereafter stated we deem this an immaterial issue, it is unnecessary to determine the merits of this contention.

The next question is whether the court abused its discretion in not permitting plaintiff to adduce further evidence. Sec. 111.07 (7), Stats. 1939, provides in part:

"The court may, in its discretion, grant leave to adduce additional evidence where such evidence appears to be material and reasonable cause is shown for failure to have adduced such evidence in the hearing before the board. The board may modify its findings as to facts, or make new findings by reason of such additional evidence, and it shall file such modified or new findings with the same effect as its original findings and shall file its recommendations, if any, for the modification or setting aside of its original order."

By the terms of this section the trial court in its discretion may grant leave to adduce additional evidence. It is plain from a reading of the statute that if leave is granted, the evidence is to be adduced before the board which may modify its findings on the basis of such additional evidence and file new findings with the same effect as the original findings. The statute does not contemplate that any evidence be produced before the court, the court's powers being limited to granting leave to present new facts to the board. As heretofore stated, what plaintiff sought leave to establish by further evidence was that under the constitution of the union the mere payment of initiation fees without more did not make the discharged employees members of the union. This is an immaterial issue. When an employer dismisses an employee for union activities or discriminates with respect to his tenure for this reason, it is of no consequence that the discharged employee is not actually a member of the union. He might be opposed to unions and steadfast in his refusal to have anything to do with them, but if his employer supposes him to be a member of the union or to be engaged in organizational activities and dismisses him on that account, he engages in an unfair labor practice under the act. Sec. 111.06 (1) (c), Stats. 1939, states that it shall be an unfair labor practice "to encourage or discourage membership in any labor organization, employee agency, committee, association, or representation plan by discrimina-

tion in regard to hiring, tenure or other terms or conditions of employment." If the employer rightly or wrongly supposes his employees to be in any stage of organizational activities leading to co-operative bargaining and discriminates against those whom he supposes to be so engaged by dismissing them or otherwise discriminating against them with respect to the conditions of their employment, he engages in an unfair labor practice. Hence, we think that the issue proposed by plaintiff was not material. To construe the act so as to permit an employer to dismiss his employee for real or suspected organizational activities leading to unionization but to forbid him to discriminate against those who had completed the process and become union members would contravene the letter of the law and largely defeat its purpose. Aside from this, plaintiff showed no reasonable cause for not producing this evidence before the board.

The next contention is that the evidence does not sustain the findings of the board. In this connection we draw attention to the somewhat curious provisions of this act. Sec. 111.07 (3), Stats. 1939, provides that the proceedings before the board shall be "governed by the rules of evidence prevailing in courts of equity and the party on whom the burden of proof rests shall be required to sustain such burden by a clear and satisfactory preponderance of the evidence." This imposes upon the party seeking to arouse the action of the board the burden of establishing his facts by a clear and satisfactory preponderance of the evidence. However, the standard by which the findings are to be tested by a court upon a petition for review is not the same as that prescribed for the board. Sec. 111.07 (7), Stats. 1939, provides, in part:

"The findings of fact made by the board, if supported by credible and competent evidence in the record, shall be conclusive."

Thus, the standards set up for the board are more stringent than those by which its action is to be judged upon a petition to review. Since the legislature was not required to impose upon the person having the burden of proof the duty of sustaining this burden by a clear and satisfactory preponderance of the evidence, we see no reason why it might not limit the review as it has. This disposes of plaintiff's contention that the proof does not establish by a clear and satisfactory preponderance of the evidence the factual basis for the order of the board.

The next contention is that the board admitted hearsay evidence, and that without such hearsay statements 'there is no competent evidence supporting its findings. We think there is nothing to this contention. The hearsay statements which it is claimed were erroneously admitted were those of a Mrs. Sinder, supervising forelady in the employ of plaintiff. We do not deem it necessary to determine here, (1) whether the statements of Mrs. Sinder were hearsay, or (2) whether, not being objected to, they were entitled to be considered by the board. After a careful review of the record, we are of the opinion that there was ample credible and competent evidence aside from testimony as to Mrs. Sinder's declarations to require the conclusion that the board's findings are supported by the evidence. The record contains sufficient statements by Mr. Kasik, president, operating manager and principal stockholder of plaintiff, indicating his attitude toward unions and his strong objections, vigorously put before his employees, to their engaging in any union activities. There is evidence that the discharged employees had a good employment record, and that the condition of the building was such as to completely take up the working hours of the entire staff of employees and to require overtime work on numerous occasions. The evidence is that the requirements for the kind of work that these women were doing remained substantially constant

during all of this period. The employer took a vigorous part in an election of employees to determine whether the union would constitute the bargaining agent for the employees. The election occurred August 17, 1938, and resulted in a tie vote. Shortly after the election the union members complained of working conditions to the agent of the union, and it was suggested that the employees bring the matter to the attention of the industrial commission. The union attempted to do this but the industrial commission declined to act upon the instigation of the union. In January, 1939, the employees evidently made some representations to the commission, the latter communicated to Kasik concerning the objectionable conditions, and they were promptly corrected. The discharge followed in May, 1939.

We conclude that there is substantial credible and competent evidence to sustain the findings that these discharges constituted a discrimination against the employees dismissed because of their activities looking toward a unionization of the staff. This was the only question properly before the trial court. The statute does not authorize the trial court to reverse the board for errors in the admission of evidence. Its sole function is to see that there is credible and competent evidence to sustain the board's findings. There being evidence in this case which supports the findings, and which is unquestionably credible and competent, we do not find it necessary to determine whether some of the evidence was hearsay, or whether the fact that it was not objected to rendered it competent in any event.

It is further contended that the order to reinstate is improper because there is no work available for the discharged to do. However, the board found that there was work, and this finding is sustained by the record. The building which they helped to care for is unchanged, tenancy remains about the same, the work done by the full staff was of such

a character as to require frequent overtime work, and we see no reason to conclude that there is not work to do.

We discover no error in the conclusion of the trial court.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 24, 1940.